Hamid R. Rafatjoo (SBN 181564)
**RAINES FELDMAN LLP**
1800 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone: (310) 440-4100
Facsimile: (310) 691-1367
Email: hrafatjoo@raineslaw.com

Carollynn H.G. Callari (*Pro Hac Vice*)
David S. Forsh (*Pro Hac Vice*)
**RAINES FELDMAN LLP**
One Rockefeller Plaza, 10th Floor
New York, NY 10020
Email: ccallari@raineslaw.com
        dforsh@raineslaw.com

*Counsel for the Foreign Representative*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| In re:<br><br>VITALY IVANOVICH SMAGIN,<br><br>        Debtor in a Foreign Proceeding. | DISTRICT COURT CASE NO. 2:21-cv-08447-RGK<br><br>BANKRUPTCY COURT CASE NO. 2:21-bk-15342-BB<br><br>Chapter 15<br><br>**FOREIGN REPRESENTATIVE'S OBJECTION TO THE MOTION OF FOREIGN DEBTOR FOR WITHDRAWAL OF REFERENCE**<br><br>The Hon. R. Gary Klausner<br><br>Date: December 6, 2021<br>Time: 9:00 a.m.<br>Place: Courtroom: 850 - 8th Floor<br>        Royal Federal Building and<br>        U.S. Courthouse<br>        255 E. Temple Street<br>        Los Angeles, CA 90012 |

2957766.1

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ................................................................................................5

ARGUMENT ....................................................................................................9

    I.      The Motion Is Not Timely ...............................................10

    II.    There Is No Cause for Withdrawal .....................................11

          A.    Withdrawal Is Contrary to Judicial Efficiency .........11

          B.    The Debtor Has No Regard for Costs or Creditors .................16

          C.    Confusion Caused By The Debtor Is Not Cause For Withdrawal ...............................................................21

          D.    The Debtor Is Forum Shopping ..............................22

CONCLUSION.................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Sec. Farms v. Int'l Bhd. of Teamsters*,
124 F.3d 999 (9th Cir. 1997) .......................................................................10, 11

*In re First Alliance Mortg. Co.*,
282 B.R. 894 (C.D. Cal. 2001) .............................................................................9

*In re G-I Holdings, Inc.*,
295 B.R. 211 (D.N.J. 2003) ................................................................................16

*In re GTS 900 F, LLC*,
No. 2:09-BK-35127-VZ, 2010 WL 4878839 (C.D. Cal. Nov. 23, 2010)............22

*In re Healthcentral.com*,
504 F.3d 775 (9th Cir. 2007) ..............................................................................12

*In re Mahlmann*,
149 B.R. 866 (N.D. Ill. 1993) .............................................................................10

*In re New York Trap Rock Corp.*,
158 B.R. 574 (S.D.N.Y. 1993) ............................................................................22

*In re Orion Pictures Corp.*,
4 F.3d 1095 (2d Cir. 1993) ..................................................................................11

*In re Pruitt*,
910 F.2d 1160 (3d Cir. 1990) ................................................................................9

**Statutes**

11 U.S.C. § 1520(a)(3) ...........................................................................................13

11 U.S.C. § 363(b) ..................................................................................................13

11 U.S.C. § 554(b) ..................................................................................................13

28 USC § 158...........................................................................................................16

28 USC § 157(b)......................................................................................................16

**Rules**

Fed. R. Bankr. Proc. 9019 .......................................................................................13

2957766.1

Evgeniy Nikolaevich Ratnikov ("**Mr. Ratnikov**" or the "**Foreign Representative**"), in his capacity as the duly-appointed trustee of Vitaly Ivanovich Smagin ("**Mr. Smagin**" or the "**Debtor**") in the Debtor's insolvency proceeding pending in the Russian Federation (the "**Russian Proceeding**") and the duly-recognized foreign representative of the Russian Proceeding in the underlying case under Chapter 15 of the Bankruptcy Code, no. 2:21-bk-15342-BB (the "**Chapter 15 Case**"), hereby submits this objection to the Debtor's motion to withdraw the reference of the Chapter 15 Case [Docket No. 1] (the "**Motion**") and respectfully submits as follows:

## **PRELIMINARY STATEMENT**

1.      The Foreign Representative commenced the Chapter 15 Case on June 30, 2021 in order to facilitate the performance of his duties as the duly-appointed trustee in the Russian Proceeding.  After extensive motion practice and multiple hours of argument across four hearings before the Bankruptcy Court, and multiple days of negotiations among the parties beginning as early as 5.30 am (PT), the parties ultimately arrived at agreed orders providing relief to the Foreign Representative and related protections for the Debtor in accordance with the Bankruptcy Code.

2.      This agreed relief is set forth in the Bankruptcy Court's orders dated July 30, 2021 [BK Docket[1] 50] (the "**Recognition Order**") and August 13, 2021 [BK

---

[1] The notation "BK Docket" is used herein to refer to the docket of the Chapter 15 Case.

Docket 84] (the "**Protections Order**").   The Recognition Order and Protections Order are referred to herein as the "**Relief Orders**".[2]   Of particular relevance here, the Relief Orders carefully balance the Foreign Representative's right, as trustee of the Debtor, to exercise the Debtor's rights in pending litigation while providing the Debtor with a procedure to be heard in such litigations if needed (and in addition to being heard at any time in the Bankruptcy Court and in the Moscow Court).   This balance specifically provides for the Bankruptcy Court to serve as a gatekeeper before the Debtor may interfere with the Foreign Representative in the Subject Litigations or otherwise before the Court.   This is the best result that the Debtor can hope for, as the Debtor simply does not have further rights.   Moreover, while the overall set of issues to be judicially resolved does not change, dividing the issues between the Bankruptcy Court and this Court actually leaves each court with fewer issues to deal with and a smaller burden that is not duplicative of the other court.

3.     The Debtor and his counsel have determined to seek permissive withdrawal of the reference of this Chapter 15 Case because they are unhappy with their outcomes so far in the Chapter 15 Case, where all of their attempts to impede the Foreign Representative have been denied to date and where they both are facing contempt sanctions: the Bankruptcy Court has issued an order [BK Docket 144] (the

---

[2] Copies of the Recognition Order and the Protections Order are attached to the accompanying *Declaration of Hamid R. Rafatjoo* ("**Rafatjoo Decl.**") as Exhibit A and Exhibit B thereto.

"**Contempt OSC**")[3] against the Debtor and his counsel to show cause why they should not be held in civil contempt for violating the Bankruptcy Court's orders in connection with the recent appeal.  The Motion should be denied because it is motivated by an improper purpose.

4.     In addition, the Motion should be denied because it is untimely and because it fails to establish cause for withdrawal.  The Motion is untimely because the purported relationship of the Chapter 15 Case with other matters before this Court has been known since the beginning of the Chapter 15 Case and is not timely raised now.  Moreover, as discussed below, those other matters before this Court do not have any relevant overlap with the U.S. and Russian bankruptcy law issues to be addressed in the Chapter 15 Case, which issues are within the core jurisdiction and expertise of the Bankruptcy Court.  For this and other reasons as discussed further below, there is no cause for permissive withdrawal of the reference.

5.     The Debtor's attempts to manufacture timeliness or cause from purported "confusion" or discussion of contempt sanctions at the October status conference in the Bankruptcy Court are preposterous.  Any "confusion" arose only because of multiple brazen misrepresentations by counsel for the Debtor regarding the Court's order joining the Foreign Representative into the Enforcement Action, all as documented in the OSC Motion, to such a degree that said conduct is one of the

---

[3] Rafatjoo Decl. Exhibit C.  A copy of the Foreign Representative's motion for the Contempt OSC attached as Exhibit D to the Rafatjoo Declaration.

2957766.1

enumerated grounds for a finding of civil contempt as set forth in the Contempt OSC. Regardless, "confusion" at *a status conference* without prior briefing over the potential future implications of the Court's order in the Enforcement Action for some unidentified and entirely speculative set of future circumstances cannot constitute cause for withdrawal of the reference of the Chapter 15 case.  The Debtor's concerns over potential contempt sanctions in the Bankruptcy Court also do not constitute cause for withdrawal of the reference of the Chapter 15 case.

6.      Withdrawal of the reference to this Court is also not appropriate because having Judge Klausner preside over this Chapter 15 Case in its entirety, or otherwise having Judge Klausner act as an appellate court over decisions by the Bankruptcy Court regarding the Debtor's ability as a process matter to interfere with the Foreign Representative in the Subject Litigations, and also sitting as a trial court over substantive issues in the Subject Litigations, is a process that would negate vast swathes of the heavily negotiated and agreed-upon Relief Orders.  Such a result is not appropriate or in the interests of justice under any circumstances, and is particularly inappropriate when it is prompted by the Debtor and his counsel hoping to forum shop away from an unbroken string of defeats in the Bankruptcy Court.

7.      The Court also should not credit the Debtor's professed concerns over inefficiencies or litigation costs in the Chapter 15 Case.  It is the Foreign Representative who is seeking to recover assets for the Debtor's creditors in an efficient and cost-effective manner.  While the Foreign Representative's litigation

2957766.1

costs are being funded on a current basis, the Debtor's are not.  The Debtor's counsel has a fully contingent fee and expects to be satisfied from the frozen Alpha Trust funds in priority to creditors in the Russian Proceeding.  Because the frozen Alpha Trust funds vastly exceed the amount of the U.S. Judgment, the Debtor and his counsel have no incentive whatsoever to be cost-effective or efficient in their litigation efforts.  Indeed, their incentives are to the contrary as evidenced by their incessant litigation and motion practice.

8.     Finally, the Court should be aware that the Debtor could resolve his issues with the Moscow Court and the Foreign Representative at any time simply by directing the Alpha Trust funds to a Russian financial institution or to the Moscow Court for distribution to creditors, with residual value to the Debtor, instead of fighting to move such funds to his own personal version of the Alpha Trust in another offshore haven.  That the Debtor refuses to do so is telling.

9.     For these reasons, the Motion should be denied in its entirety.

## **BACKGROUND**

10.     Mr. Smagin has been attempting to recover on claims against Mr. Yegiazaryan in multiple litigations across various countries for more than a decade. Mr. Smagin's assets within the territorial jurisdiction of the United States consist of the following:

       (i)     *Vitaly Ivanovich Smagin v. Ashot Yegiazaryan, et al.*, Case No. 2:14-cv-09764-RGK-PLA (C.D. Cal.) (together with any appeals therefrom, the "**Enforcement Action**");

5

(ii)     the judgment entered in the Enforcement Action on March 31, 2016, in favor of the Debtor in the amount of $92,503,652, plus all fees and interests accrued thereon (the "**U.S. Judgment**");

(iii)    *Vitaly Ivanovich Smagin v. Ashot Yegiazaryan, et al.*, Case No. 2:17-cv-06126-RGK-PLA (C.D. Cal.)(together with any appeals therefrom, "**Fraudulent Transfer Action**"); and

(iv)    *Vitaly Ivanovich Smagin v. Compagnie Monégasque De Banque a/k/a CMB Bank, et al.*, Case No. 2:20-cv-11236-RGK-PLA (C.D. Cal.) (together with any appeals therefrom, the "**RICO Action**", and together with the Enforcement Action and Fraudulent Transfer Action, the "**Subject Litigations**").

11.     On August 20, 2020, the Arbitration Court of the City of Moscow (the "**Moscow Court**") ordered the commencement of the restructuring phase of the Russian Proceeding and appointed Mr. Ratnikov as the insolvency officer and financial manager for the Russian Proceeding.

12.     On May 28, 2021, after creditors in the Russian Proceeding rejected the Debtor's proposed restructuring plan, the Moscow Court adjudged the Debtor insolvent, initiated the liquidation phase of the Russian Proceeding, and appointed Mr. Ratnikov as the trustee for the Debtor to manage the liquidation.

13.     On June 30, 2021, the Foreign Representative commenced the Chapter 15 Case to facilitate the performance of his duties as the duly-appointed trustee in the Russian Proceeding.

14.     On July 28, 2021, the Bankruptcy Court held a hearing on the Foreign Representative's petition for recognition.   On July 30, 2021, after extensive negotiations among the parties, the Bankruptcy Court entered the Recognition Order,

6

2957766.1

pursuant to section 1520 of the Bankruptcy Code, agreed as to form by the Debtor, recognizing the Russian Proceeding as a foreign main proceeding, recognizing the Foreign Representative as the foreign representative thereof, and granting related relief.   Among other things, the Recognition Order authorized the Foreign Representative to "exercise all of the rights and powers of a trustee" with respect to the assets and property of the Debtor in the United States.  Recognition Order at 4.

15.     After four hearings relating to the relief for the Foreign Representative and protections for the Debtor, on August 13, 2021, the Bankruptcy Court entered the Protections Order granting further relief to the Foreign Representative pursuant to section 1521 of the Bankruptcy Code and related protections to the Debtor.

16.     Among other things, the Protections Order empowered the Foreign Representative to "exclusively administer all of the Debtor's assets within the territorial jurisdiction of the United States" and "exercise all of the Debtor's rights and powers concerning or relating to" the Enforcement Action.  Protections Order at 4.  In addition, "[t]he Debtor shall not have the right to interfere, appear or be heard in the District Court on behalf of the plaintiff or judgment creditor in the Enforcement Action."  Protections Order at 9.

17.     As required by section 1522(a) of the Bankruptcy Code, the interests of the Debtor were "sufficiently protected" with respect to the relief granted to the Foreign Representative under the Protections Order.   These protections included without limitation reporting obligations by the Foreign Representative, the ability to

7

be heard before the Bankruptcy Court concerning issues that could arise with the Foreign Representative or the underlying litigations, and a mechanism by which the Debtor could seek leave from the Bankruptcy Court, including a potential modification of the Protections Order, to allow the Debtor to make further filings in the Enforcement Action.  *E.g.* Protections Order at 9, 11.  The Debtor agreed not to appeal the Protections Order or the Recognition Order.  Protections Order at 10.

18.     On September 9, 2021, pursuant to the meet and confer requirements of Local Rule 7-3 in advance of motion practice, counsel for the Foreign Representative emailed to counsel for the Debtor a substantially final draft of a motion intended for filing in the Enforcement Action to effect the substitution.  After email exchanges including substantive issues regarding the motion, the meet and confer occurred on September 14, 2021.

19.     On September 15, 2021, the Bankruptcy Court held a regularly scheduled status conference in this case (the "**September Conference**").[4]   The proposed substitution and the Debtor's opposition thereto were discussed.

20.     On September 17, 2021, the Foreign Representative filed a motion in the Enforcement Action to substitute for the Debtor.  EA Docket[5] No. 398.

21.     On September 20, 2021, the Debtor moved for leave from the Bankruptcy Court to oppose the substitution on precisely the grounds discussed at

---

[4] The transcript of the September conference is attached as Exhibit E to the Rafatjoo Decl.

[5] The notation "EA Docket" is used herein to refer to the docket of the Enforcement Action.

2957766.1

the September Conference [BK Docket 102].  The Bankruptcy Court entered an order denying leave later that day [BK Docket 104].

22.     On September 21, 2021, the Debtor commenced an appeal purportedly from the Bankruptcy Court's denial of leave (the "**Appeal**"), which was subsequently docketed with this Court as case no. 2:21-cv-07562 (C.D. Cal.).

23.     On October 8, 2021, this Court entered an order joining the Foreign Representative to the Enforcement Action as lead plaintiff and denying the substitution motion as moot [EA Docket No. 399] (the "**Joinder Order**").[6]

24.     On October 13, 2021, the Bankruptcy Court held a regularly scheduled status conference in this case (the "**October Conference**").[7]

## **ARGUMENT**

25.     Permissive withdrawal by the district court of the reference to the bankruptcy court is allowed "on timely motion of any party, for cause shown."  28 U.S.C. § 157(d).  The "burden of persuasion is on the party seeking withdrawal." *In re First Alliance Mortg. Co.*, 282 B.R. 894, 902 (C.D. Cal. 2001) (citation omitted). Courts recognize that Congress "did not intend for the indiscriminate withdrawal of the reference from the bankruptcy courts."  *In re Pruitt*, 910 F.2d 1160, 1170 (3d Cir. 1990).   Section 157(d) is construed narrowly to "respect[] the presumption that bankruptcy cases are to be adjudicated by bankruptcy judges in bankruptcy courts"

---

[6] A copy of the Joinder Order is attached as Exhibit F to the Rafatjoo Declaration.

[7] The transcript of the October Conference is attached as Exhibit G to the Rafatjoo Declaration.

and that permissive withdrawal should not provide an "escape hatch" out of bankruptcy court. *In re Mahlmann*, 149 B.R. 866, 870 (N.D. Ill. 1993).

**I.     THE MOTION IS NOT TIMELY**

26.     Motions for a permissive withdrawal of the reference should "be made as promptly as possible in light of the developments in the bankruptcy proceeding." *Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1007 n.3 (9th Cir. 1997) (citation omitted).  "The reason for the timeliness requirement is to prevent parties from forum shopping, stalling, or otherwise engaging in obstructionist tactics."  *Mahlmann*, 149 B.R. at 869 (citing cases).

27.     This Chapter 15 Case was commenced on June 30, 2021.  Each of the Subject Litigations was already pending at that time, and the Debtor was fully aware of any relationship between those actions and the Chapter 15 Case at that time.

28.     The Relief Orders were entered on July 30, 2021 and on August 13, 2021, after multiple hours of hearings before the Bankruptcy Court and extensive effort by the parties.  The procedure that the Debtor now complains of was a heavily negotiated, crucial component of the Relief Orders needed to balance the Foreign Representative's displacement of the Debtor as trustee and allow the Foreign Representative to act in pending litigation without undue interference while providing the Debtor with a procedure to be heard on such issues if needed.

29.     The Debtor has been aware of the circumstances of the Subject Litigations and the Chapter 15 Case for months.  The Debtor cannot now raise the

2957766.1

Relief Orders or the purported relationship between the Subject Litigations and the Chapter 15 Case as timely grounds for withdrawal of the reference.  The Court should deny the Motion for lack of timeliness to the extent it relies on any such grounds.

## II.   THERE IS NO CAUSE FOR WITHDRAWAL

30.   "In determining whether cause exists, a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms* at 1008.  As the Motion seeks withdrawal of the reference for the entire Chapter 15 Case, uniformity is not implicated.  However, all other relevant factors weigh heavily against withdrawal.

### A.   Withdrawal Is Contrary to Judicial Efficiency

31.   In considering judicial efficiency in the context of a motion to withdraw the reference, district courts should consider whether the matter is core or noncore, "since it is upon this issue that questions of efficiency and uniformity will turn."  *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993).  Core matters are those where the bankruptcy court may enter final judgments, and non-core matters are those which the bankruptcy court may hear but for which it may only submit proposed findings of fact and conclusions of law to the district court for de novo review.  *Sec. Farms* at 1008.  Generally, issues that depend on bankruptcy law and cannot exist outside of a bankruptcy case are "core" while those that do not depend

11

2957766.1

on bankruptcy laws for their existence and that could proceed in another court are considered 'non-core.'  *Id.*  Even where a matter is non-core or otherwise involves matters requiring a resolution outside of the bankruptcy court, it may be appropriate for the bankruptcy court to retain jurisdiction over the case for initial proceedings. *In re Healthcentral.com*, 504 F.3d 775, 788 (9th Cir. 2007) (the bankruptcy court may retain jurisdiction for pretrial matters even where there is a Seventh Amendment right to a jury trial in the district court ).

32.     The Subject Litigations are premised on the Debtor's efforts to collect a judgment award against Mr. Yegiazaryan:

- The Enforcement Action is a case that was closed in 2019 and has not had any regular activity for years.  Any future activity seems likely to entail additional motions for contempt against Mr. Yegiazaryan or as-needed basis to prevent future efforts by him to evade the U.S. Judgment.

- The Fraudulent Transfer Action is a case that has been stayed since 2018. It has little import for collection efforts and future activity in the case is unlikely at best.

- The RICO Action is a case that has been already dismissed with prejudice for lack of a domestic injury.  The pending appeal of that dismissal faces long prospects on appeal and even longer prospects if remanded, particularly with respect to personal jurisdiction over key defendants such as CMB Bank, the entity currently holding the Alpha Trust funds pending the resolution of litigation in Monaco.

In other words, the Subject Litigations going forward are likely to involve only further contempt actions against Mr. Yegiazaryan to assist in collection efforts on the U.S. Judgment, and might also involve questions of personal jurisdiction and related motion practice.  If additional potential assets or other options to satisfy the U.S.

Judgment (beyond the frozen Alpha Trust funds) are discovered at some point in the future, the Enforcement Action may also see related collection efforts.

33.     On the other hand, the Chapter 15 Case is premised on the Moscow Court's order of May 28, 2021 adjudging the Debtor to be insolvent, initiating liquidation procedures with respect to his assets, and appointing Mr. Ratnikov as the trustee charged to effect such procedure.  The Chapter 15 Case addresses issues of comity and restructuring processes under U.S. and Russian bankruptcy law.  For example, the Bankruptcy Court had to review and consider expert declarations concerning Russian bankruptcy law and the powers of Mr. Ratnikov as trustee in the Russian Proceeding during the liquidation phase.  Further, to the extent that the Foreign Representative may in the future seek to sell, settle, abandon or otherwise dispose of any of the Debtor's assets within the territorial jurisdiction of the United States, including the Subject Litigations, such decisions will be evaluated under bankruptcy law, in particular sections 363 and 554 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019.  *See, e.g.,* Protections Order at 4, 6, 8; 11 U.S.C. §§ 363(b), 554(b); Fed. R. Bankr. Proc. 9019.  The Chapter 15 Case will also necessarily involve questions under various provisions of Chapter 15 of the Bankruptcy Code, such as section 1520(a)(3), which provides the Foreign Representative with the rights and powers of a trustee with respect to assets of the Debtor in the United States.  11 U.S.C. § 1520(a)(3); Recognition Order at 4.

34.     All of these Chapter 15 Case issues are within the core jurisdiction of the Bankruptcy Court.   The Foreign Representative respectfully submits that, as envisioned by Congress and the structure of the Bankruptcy Code, the Bankruptcy Court is better positioned to resolve such issues. Indeed, the Bankruptcy Court has already considered these and other issues, with argument thereon, none of which have been or will be considered by this Court in presiding over the Subject Litigations.   In addition, to the extent that the Debtor continues to manufacture issues and disputes regarding the Relief Orders issued by the Bankruptcy Court and the operative provisions, the Bankruptcy Court is best positioned to resolve such issues in the first instance.

35.     All of these Chapter 15 Case issues have zero or very little relevant overlap with the issues that have actually arisen to date or are likely to arise in the future in the Subject Litigations.[8]   For example, as Mr. Yegiazaryan has not yet satisfied the U.S. Judgment or the prior contempt awards against him, pursuing further contempt sanctions against Mr. Yegiazaryan might be an appropriate course of action in the Enforcement Action in the future.   But the Foreign Representative's rights under sections 363 or 1520 of the Bankruptcy Code, for example, are not likely

---

[8] The Motion takes issue with the Foreign Representative disputing the relationship between the Subject Litigations and the Appeal.  The Foreign Representative's position on that issue is set forth in detail in his opposition to the Debtor's notice of related cases [Appeal Docket 10], in his motion to reconsider [Appeal Docket 21], in his motion to strike the Debtor's unauthorized filing in support of the notice of related cases [Appeal Docket 22], and in the OSC Motion.  Copies of these filings from the Appeal are attached as Exhibits H, I and J to the Rafatjoo Declaration.

14

to have any bearing on or be impacted by such a motion.  Similarly, if the Foreign Representative discovers some new pool of assets of Mr. Yegiazaryan to pursue for collection of the U.S. Judgment or to enforce the extant injunction against some third party colluding with Mr. Yegiazaryan to frustrate collection of the U.S. Judgment, the Foreign Representative can move in the Enforcement Action as necessary to collect on the Judgment or enforce the injunction.  Again, no Chapter 15 or other bankruptcy questions are implicated.  The issues that will arise in the Enforcement Action simply do not overlap in any relevant respect with the Chapter 15 Case issues described above.

36.     In addition, as noted above, the Debtor previously filed a motion seeking to appoint an examiner, which appears to be the first such motion in a Chapter 15 bankruptcy case despite more than 1,700 such cases being filed to date since the enactment of Chapter 15 in 2005.  Just last week, the Debtor felt the need to expressly reserve the right to seek renewal of that motion.  BK Docket 136 at 8.  It is difficult to imagine a more novel bankruptcy issue or one that is more suited for initial determination by the Bankruptcy Court.  Similarly, last week the Debtor also warned of an intention to seek modification of the Relief Orders.  *Id.*  The Bankruptcy Court is best positioned to interpret and make initial determinations regarding its own prior orders and the related provisions of the Bankruptcy Code.

37.     Accordingly, judicial resources would be most efficiently used if the reference remains with the Bankruptcy Court.  Because the Bankruptcy Court has the

2957766.1

most familiarity with the Russian Proceeding, the rights of the Foreign Representative and of the Debtor with respect thereto, and its own prior orders, and is better positioned to address the Bankruptcy Code issues that are likely to arise in the future in the Chapter 15 Case, it would be contrary to the efficient use of judicial resources to withdraw the reference of the Chapter 15 Case.

38.     Finally, the Court should also reject the Debtor's suggestion that the prospect of future appeals from the Bankruptcy Court to the District Court justifies withdrawal.  Such an argument stands the statutory framework on its head, as the bankruptcy court is supposed to act as the trial court for core matters with appeals taken to the district court.  28 U.S.C. §§ 157(b), 158.  If the mere prospect of appellate review justified withdrawal, there would be no end.  *See, e.g., In re G-I Holdings, Inc.*, 295 B.R. 211, 216 (D.N.J. 2003) ("At a logical extreme of the issue of judicial economy is the idea that everything would be withdrawn because one way or another everything that happens in the bankruptcy court is reviewable by the district court; this would eliminate review. Obviously, that is not what Congress had in mind.").

**B.     <u>The Debtor Has No Regard for Costs or Creditors</u>**

39.     The Court should not credit the Debtor's complaints over inefficiencies or litigation costs in the Chapter 15 Case.  The Foreign Representative is funding his costs on a current basis and is working to meet timelines for distributions to creditors

2957766.1

in the Russian Proceeding.[9]   In contrast, the Debtor is not funding his costs on a current basis and has no such timeline.   The Foreign Representative believes that counsel for the Debtor, in the United States and elsewhere, is on a fully contingent basis and intends to be satisfied from the frozen Alpha Trust funds in priority to creditors in the Russian Proceeding (and in violation of applicable Russian law).[10] Because the frozen Alpha Trust funds vastly exceed the amount of the U.S. Judgment, the Debtor and his counsel have no incentive whatsoever to be cost-effective or efficient in their litigation efforts.   Indeed, any delay benefits the Debtor with respect to the Russian Proceeding – either the creditors there become frustrated enough to accept whatever pittance the Debtor deigns to provide, or to require a fire sale of the Debtor's assets, allowing the Debtor to further complain about his treatment in the Russian Proceeding.   Accordingly, the Debtor and his counsel are incentivized to pursue total victory (*i.e.*, control over all of the Alpha Trust funds in his own personal offshore haven outside of the jurisdiction of the Moscow Court) without any regard

---

[9] *Declaration of Evgeny Nikolaevich Ratnikov* [BK Docket 67] (the "**Ratnikov Decl.**") ¶ 15.   A copy of the Ratnikov Declaration is attached as Exhibit K to the Rafatjoo Declaration.

[10] The Foreign Representative notes the Debtor's statements in connection with the RICO Action to this Court regarding the Debtor's purported incurrence of fees in the United States, and the Court's dismissal of the RICO Action for lack of a domestic injury for reasons including but not limited to lack of payment from bank accounts in the United States.   *Amended Memorandum of Points and Authorities in Support of Plaintiff Smagin's Opposition to Defendant Compagnie Monegasque De Banque's Motion to Dismiss the Complaint*, EA Docket 90 at 19:4-6 ("Mr. Smagin has incurred significant legal fees in the United States"); *Order re: Defendant Ashot Yegiazaryan's Motion to Dismiss*, EA Docket 95 at 8 (rejecting the Debtor's legal fees as constituting a domestic injury "because Smagin has not alleged that he paid his lawyers *out* of bank accounts in the United States.") (emphasis in original).   The Foreign Representative believes that such fees are fully contingent and have not been paid at all, let alone out of bank accounts in the United States.

for timing or cost, with every tactic no matter how unlikely to succeed, and without regard for the interest of creditors.

40.     Even a cursory review of the Chapter 15 Case docket illustrates that the Debtor is acting in accordance with this perverse incentive structure.  The Debtor has unreasonably and vexatiously multiplied proceedings there, including among other things (i) a motion to reconsider the Bankruptcy Court's order scheduling a hearing on the Foreign Representative's petition for recognition, (ii) not less than 10 filings in opposition to that recognition and related relief, (iii) a motion to appoint an examiner, and (iv) filing oppositions to each of the three status reports filed by the Foreign Representative, none of which requested any relief or required any response.

41.     The recent Appeal is another example of the Debtor's utter disregard for cost or practicality.  As set forth in the OSC Motion and shown in the Contempt OSC, the Appeal was taken in violation of the Relief Orders and lacked any legal merit.[11] But more importantly here, the Debtor had already received extensive protections for its interests under the Relief Orders and therefore had no legitimate concern or reason to warrant opposing substitution.  The only purpose for the Appeal was to increase fees and to disparage the Foreign Representative before this Court.[12]

---

[11] OSC Motion ¶¶ 40-44. Among other things, the argument that substitution by a foreign representative violates the Bankruptcy Code because section 1524 of the Bankruptcy Code only authorizes intervention is nonsense.

[12]  As set forth in the OSC Motion, the Debtor did not have legitimate concerns that required opposition to the Foreign Representative's substitution.  OSC Motion ¶ 62, n.9.

18

42.     The RICO Action, with which the Court is familiar, is another such example.  Apart from the lack of a domestic injury that resulted in the dismissal with prejudice of that action, the RICO Action faces other grave legal deficiencies including but not limited to the lack of personal jurisdiction over key defendants such as CMB Bank, the bank in Monaco currently holding the Alpha Trust funds,[13] and estoppel and comity issues with respect to the Debtor's conspiracy theories that have already been litigated in and rejected by the Moscow Court (and affirmed on appeal therefrom).  But more importantly here, the RICO Action has no legitimate purpose: the underlying issues and relief (*i.e.*, directing the disposition of the Alpha Trust funds) are already being litigated in other actions and before other courts, so the RICO Action will unavoidably conflict with and complicate any potential resolution.  Rather, it serves only to increase the legal fees for Debtor's counsel and to frustrate progress in the Russian Proceeding.

43.     The complaints in the Motion about the process painstakingly negotiated in the Relief Orders, whereby the Bankruptcy Court acts as a gatekeeper

---

[13] Notably, in dismissing the RICO Action with prejudice for lack of a domestic injury, the Court did not reach, among other things, CMB Bank's objections to personal jurisdiction in the United States, which the Debtor attempted to rebut by a single paragraph without reference to any supporting authority, and which objections have been renewed by CMB Bank (and other defendants) in the pending appeal as further grounds for affirming the Court's decision. *Memorandum of Points and Authorities in Support of Defendant CMB Monaco's Motion to Dismiss*, Case No. 2:20-cv-11236-RGK-PLA (C.D. Cal.) [Docket No. 70-1] at 5-10; *Amended Memorandum of Points and Authorities in Support of Plaintiff Smagin's Opposition to Defendant Compagnie Monegasque De Banque's Motion to Dismiss the Complaint*, Case No. 2:20-cv-11236-RGK-PLA (C.D. Cal.) [Docket No. 90] at 9-10; *Defendant-Appellee CMB Monaco's Answering Brief*, No. 21-55537 (9th Cir.) [Docket No. 30] at 34-42.

before the Debtor may interfere with the Foreign Representative, lack any merit.  This procedure specifically and intentionally provides for the Bankruptcy Court to serve as a gatekeeper before the Debtor may interfere with the Foreign Representative in this Court and in the Subject Litigations.   To state the obvious, the Foreign Representative has the authority under U.S. and Russian law to direct the Subject Litigations and the Debtor does not have some blanket right to interfere with the Foreign Representative and make filings at will in such actions.  Accordingly, while this procedure may involve more steps for the Debtor than he wishes to take, it is the best result that the Debtor can hope for.

44.    The Debtor and his counsel appear unable to recognize that they do not have an inherent sacrosanct right to pursue collection until the end of time as they alone see fit.  Again, only the Foreign Representative has the authority at this time under Russian law, and under the orders of the Bankruptcy Court, to administer the Debtor's assets, including the ongoing litigations.  While the Debtor claims that he intends to pay his creditors in full as soon as he collects on the U.S. Judgment, his purported good intentions are immaterial.  Whatever his intentions, whatever the state of the litigation or collection efforts, the Debtor and his counsel have run out of time, liquidity and options – his creditors have validly exercised their rights and remedies under Russian law, and the Debtor is acting in violation of law.  Disposition of the Debtor's assets, including the ongoing litigation, is now a matter for the Foreign Representative.

2957766.1

45.     Finally, the Court should be aware that the Debtor could resolve his issues with the Moscow Court and the Foreign Representative at any time simply by directing the Alpha Trust funds to a Russian financial institution or to the Moscow Court for distribution to creditors, with residual value to the Debtor, instead of fighting to move such funds to his own personal version of the Alpha Trust in another offshore haven.  That the Debtor refuses to do so is telling.

### C.     <u>Confusion Caused By The Debtor Is Not Cause For Withdrawal</u>

46.     The Debtor's attempts to manufacture cause for withdrawal from purported "confusion" at the October Conference in the Bankruptcy Court are preposterous.  The only "confusion" arose because of multiple misrepresentations by counsel for the Debtor regarding the Court's order joining the Foreign Representative into the Enforcement Action, all as documented in the OSC Motion.[14]

47.     Indeed, the Contempt OSC entered by the Bankruptcy Court requires, among other things, that the Debtor and his counsel show cause why they should not be adjudged to be in civil contempt of court for, among other things, "repeated oral misrepresentations of the nature of the resolution of the Appeal at the October Conference."  Contempt OSC ¶ 1(vi).

48.     The Joinder Order consists of a single page with two paragraphs, and its meaning and provisions are not subject to any reasonable dispute.  Yet the Debtor

---

[14] OSC Motion ¶¶ 64-69.

and his counsel repeatedly misrepresented the Joinder Order to the Bankruptcy Court at the October Conference, all as set forth in the OSC Motion. Any "confusion" is entirely attributable to these and similar misrepresentations by Debtor's counsel. Regardless, "confusion" at *a status conference* (and without prior briefing) over the meaning or potential future implications of the Court's order in the Enforcement Action for some unidentified and entirely speculative set of future circumstances cannot constitute cause for withdrawal of the reference of the Chapter 15 case.

### D.   The Debtor is Forum Shopping

49.   The filing of a motion for withdrawal after an adverse ruling by the bankruptcy court has been found to indicate improper tactics. For instance, where a party filed a motion for permissive withdrawal after receiving an adverse ruling in the bankruptcy court, the court denied withdrawal and stated that to allow permissive withdrawal at that time would reward forum shopping. *In re New York Trap Rock Corp.*, 158 B.R. 574, 577 (S.D.N.Y. 1993); *see also In re GTS 900 F, LLC*, No. 2:09-BK-35127-VZ, 2010 WL 4878839, at *5 (C.D. Cal. Nov. 23, 2010) ("Forum is likely where a party moves to withdraw the reference after adverse findings have been made against it by the Bankruptcy Court.") (citing *New York Trap Rock*).

50.   Here, the Debtor has been unsuccessful on all of its motions to impede the Foreign Representative to date in the Bankruptcy Court, other than in obtaining sufficient protections as set forth in the Protections Order. In addition, the Debtor

2957766.1

and his counsel are facing contempt sanctions in the Bankruptcy Court.   This indicates forum shopping by the Debtor and warrants denial of the Motion.

51.   For the avoidance of doubt, while the OSC Motion was filed after the Motion, the Debtor and his counsel have been well aware since at least September that their actions risked contempt sanctions.   The Debtor's opposition to the substitution was discussed at the September Conference, where the Bankruptcy Court pointed out that the issue had not been briefed and was not before it, but that the Relief Orders did authorize the substitution of the Foreign Representative for the Debtor.  September Transcript at 8:22-24 (". . . the foreign representative ought to be substituting in for the debtor in the [Enforcement Action].  And I don't think the [Relief Orders] could have been any clearer . . ."); *id.* at 9:5-6 (the Relief Order "was authorizing this foreign representative to step into the debtor's shoes. That's the relief I granted.").  The Court noted that it may "be inclined to sanction somebody for arguing about that . . ." September Transcript at 9:17-19.  Five days later, Debtor then went ahead and filed its motion for leave to oppose the substitution on the exact grounds discussed at the September Conference.

52.   As the Court may be aware, the Foreign Representative's filings in the recent appeal taken by the Debtor repeatedly warned that the Debtor was violating the Bankruptcy Court's prior orders.[15]  In advance of the October status conference,

---

[15] *E.g.*, Rafatjoo Decl. Exh. G ¶ 1; Rafatjoo Decl. Exh. H. ¶ 5 n.2.

2957766.1

the Foreign Representative submitted a status report for the Bankruptcy Court setting forth in writing, over multiple pages, the detailed grounds for contempt sanctions against the Debtor and his counsel.  Such grounds were then briefly discussed at the October status conference, where the Bankruptcy Court was not willing to issue an order to show cause without briefing.  The Debtor was therefore fully aware of the potential contempt sanctions in the Bankruptcy Court and his concerns over such sanctions do not constitute cause for withdrawal of the reference.

53.     Contrary to the Motion's suggestion, the Foreign Representative does not oppose transfer of issues relating to the Chapter 15 Case to Judge Klausner merely out of a desire to write on a clean slate.  Judge Klausner's record in the Subject Litigations amply demonstrates that the Debtor's incessant conspiracy theories and other misrepresentations regarding the Russian Proceeding, the Moscow Court and the Foreign Representative have not been successful in prejudicing the Court.  The Foreign Representative opposes such transfer because the judgment enforcement issues that may arise in the Subject Litigations do not overlap in any relevant respect with the comity, restructuring, and Bankruptcy Code issues that will arise in the Chapter 15 Case and that the Bankruptcy Court is best positioned to address.

54.     In addition, withdrawal of the Chapter 15 case to the District Court, and in particular to Judge Klausner, is not appropriate here because the parties heavily negotiated and agreed to relief for the Foreign Representative, and sufficient protections for the Debtor, in a structure where the Bankruptcy Court would serve as

24

2957766.1

a gatekeeper before the Debtor may interfere with the Foreign Representative in this Court and in the Subject Litigations.  Withdrawing the reference such that Judge Klausner presides over this Chapter 15 case in its entirety, or otherwise having Judge Klausner act as an appellate court over decisions by the Bankruptcy Court regarding the Debtor's ability as a process matter to interfere with the Foreign Representative, while also acting as a trial court over substantive issues in the Subject Litigations, is a nonsensical procedure that would negate vast swathes of the heavily negotiated and agreed-upon Relief Orders.  Such a result is not appropriate or in the interests of justice under any circumstances.  Such a result is particularly inappropriate when it is a transparent attempt by the Debtor and his counsel to avoid adding to their string of defeats in the Bankruptcy Court and to avoid contempt charges therein.

## **CONCLUSION**

For the foregoing reasons, the Foreign Representative respectfully requests that the Court enter an order denying the Motion.

Dated: November 15, 2021

**RAINES FELDMAN LLP**

By:   /s/ Hamid R. Rafatjoo
        Hamid R. Rafatjoo
        Carollynn H.G. Callari
        David S. Forsh

*Counsel for the Foreign Representative*

2957766.1